UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| VLADIMIR ISIDOR ST. LOUIS, | ) | Civil Action No.: 4:09-2015-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| VICTOR LORANTH, THOMAS LILES, | ) | |
| and D. HEINRICHS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

Plaintiff, who is proceeding pro se, was at all times relevant to the incidents set forth in his Complaint, housed at the Federal Correctional Institution located in Williamsburg, South Carolina (FCI Williamsburg).  Plaintiff raises claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), complaining that Defendants Dr. Loranth and Liles were deliberately indifferent to his serious medical needs and that Defendant Heinrichs violated his First Amendment rights when he wrote incident reports charging Plaintiff with violation of the prison disciplinary code.

Presently before the Court is Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment  (Document # 30)[1].  Because he is proceeding pro se, Plaintiff was warned pursuant to  Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Motion could result in the dismissal of his claims.  Plaintiff timely filed a Response (Document # 41) to Defendants' Motion.

---

[1]Because both Defendants and Plaintiffs submit documents outside the pleadings for review in connection with this Motion, the court will treat it as one for summary judgment.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because the Motion is potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II.    FACTS AND FACTUAL ALLEGATIONS

### A.    Plaintiff's Factual Allegations

Plaintiff alleges that he sought medical attention from Defendants Liles and Dr. Loranth on February 20, 2008, due to vomiting, dizziness, chills, headaches, weakness, and blurred vision, but these Defendants denied him treatment by stating "we are not going to give you any medical treatment, only if you are coughing up blood." He alleges that Defendant Liles initially began to close the entry door after Plaintiff requested treatment and Plaintiff reached out to the door latch to again request medical treatment. Liles threatened to write a disciplinary report and send Plaintiff to the special housing unit (SHU) if he did not let go of the door latch. Dr. Loranth agreed with Liles' threats and told Plaintiff to "get out of here."

Plaintiff was later sent to medical after explaining to another officer his symptoms and his need for medical attention. At that time he saw Ms. Gillyard, who asked him who he had seen earlier about his medical problems and Plaintiff informed her he had seen Dr. Loranth and Liles. Ms Gillyard told Plaintiff that she would check with Dr. Loranth and Liles and, after she spoke with them, she told Plaintiff that he would not be seen. Plaintiff asked Ms. Gillyard if she could evaluate his symptoms and she told him she could not and that he needed to return to his housing unit. Plaintiff then explained his symptoms to Officer Barnes, who informed Plaintiff she could not evaluate him without permission from Dr. Loranth. Plaintiff returned to his housing unit and then

decided to take a shower.  After he finished his shower, he began to walk down a set of stairs and suddenly fainted and tumbled down 20 feet of stairs. Plaintiff was rendered unconscious and awoke at Williamsburg Regional Hospital.  He suffered head and back injuries as a result of the fall as well as a fever of 103 degrees.  Plaintiff was provided with a wheel chair and tylenol and returned to FCI Williamsburg.

On February 28, 2008, Plaintiff was called to medical by Dr. Loranth, who appeared angry at Plaintiff and stated that nothing was wrong with him.  Plaintiff was thereafter forced out of the wheelchair and forced to use a walker cane while still in extreme pain. Plaintiff informed Dr. Loranth that he was still in pain and could not walk back and forth to the mess hall during meals.  Dr. Loranth asked for assistance to escort Plaintiff out of Medical.  Defendant Heinrichs responded and Plaintiff informed him that he could not walk on the walker cane back to his unit.  Henirichs told Plaintiff that he needed to walk on his cane or else he would write up a disciplinary report.  Plaintiff spoke with two Lieutenants who both told Plaintiff he had to walk with the cane or be put in SHU.

On March 1, 2008, Plaintiff, weak from walking with the cane and having to wait for a meal, fell on the floor.  As a result, Plaintiff injured his back.  Plaintiff was thereafter given permission from the Warden and Institutional staff to leave early for food service.  After receiving this permission, on March 5, 2008, Plaintiff received an incident report and was placed in Institution lock-down confinement by Heinrichs.  On March 7, 2008, Plaintiff was found guilty by the Disciplinary Hearing Officer.

Plaintiff was again denied medical treatment by Dr. Loranth on March 13, 2008, and Dr. Loranth wrote Plaintiff three incident reports for interfering with staff in their performance of duty, refusing to obey a direct order, and malingering and feigning an illness.  Plaintiff was found guilty

of the offenses.

Plaintiff thereafter submitted numerous requests for medical attention and was denied the requested attention.

**B.    Facts Submitted by Defendants and Plaintiff on Summary Judgment**

Defendant Victor Loranth, M.D., is the Clinical Director at FCI Williamsburg. Loranth Dec. ¶ 1 (attached as Ex. B to Defendants' Motion). He was so employed at the time relevant to this complaint. Id. Defendant Thomas Liles is a nurse practitioner currently employed at the Federal Detention Center located in Honolulu, Hawaii. Liles Dec. ¶ 1 (attached as Ex. C to Defendants' Motion). He was employed at FCI Williamsburg at the time relevant to this complaint. Id. Defendant Liles is a Lieutenant in the United States Public Health Service. Id. at ¶ 2. Defendant Daryl Heinrichs is a Senior Officer Specialist at FCI Williamsburg. Heinrichs Dec. ¶ 1 (attached as Ex. D to Defendants' Motion). He was so employed at the time relevant to this complaint. Id.

Plaintiff was incarcerated at FCI Williamsburg on Wednesday, February 20, 2008. Hollett Dec. ¶3 (attached as Ex. A to Defendants' Motion). Inmates have several ways to access medical care at FCI Williamsburg. Loranth Dec. ¶ 5; Liles Dec. ¶ 4. One is to report to sick call during regular scheduled hours. Id.; Document 1-2, p. 6. Wednesdays are not regularly scheduled sick call days. Loranth Dec. ¶ 5; Liles Dec. ¶ 4; Document 1-2, p.6. However, any time an inmate appears at the medical unit with symptoms that indicate a potentially serious problem, medical staff will conduct a cursory examination and record vital signs before making a determination as to whether immediate care is needed. Rigney Dec. ¶ 5 (attached as Ex. N to Defendants' Motion). Records reflect that Plaintiff appeared at the Health Services Unit on the morning of February 20, 2008, seeking to make sick call. Document 1-2, p. 8. Neither Dr. Loranth nor Lt. Liles recall seeing

-4-

Plaintiff on the morning of February 20, 2008. Loranth Dec. ¶ 6; Liles Dec. ¶ 5. Had Plaintiff seen defendant Dr. Loranth or Lt. Liles and reported the conditions described in the complaint, he would have been examined. Id. However, it appears that Plaintiff did not report any symptoms to the reviewing staff member sufficient to suggest a need for immediate examination. Document 1-2, p. 8. He was assessed as not having an emergency situation and was directed to return to the clinic the following morning during normal sick call times. Id. Plaintiff went to the law library and later returned to his housing unit. Id. Ms. Gillyard avers that Plaintiff did not return to the medical unit later in the day to have a conversation with her. Gillyard Dec. ¶ 5 (attached as Ex. E to Defendants' Motion). Ms. Gillyard, a medical records technician, is not a clinician and is not trained to evaluate patients. Id. at ¶ 6.

Plaintiff submits the Affidavits of Andrew D. Evans and Michal Bittick. Evans avers that on February 20, 2008, he was in medical waiting for his blood pressure check up and he observed Plaintiff speaking with Ms. Gillyard. Evans Aff. (attached as Ex. A to Plaintiff's Response). Plaintiff told Ms. Gillyard that he was sick and explained his symptoms to her. Id. She went and told the doctors and came back out and told Plaintiff they were not going to see him. Id. She apologized and told Plaintiff there was nothing she could do and that he would have to leave. Id. Bittick avers that he was in the medical waiting room sometime around February 20th when Plaintiff came in and asked if someone could see him. Bittick Aff. (attached as Ex. B to Plaintiff's Response). Plaintiff told the acting nurse that he was dizzy, shaking, and that something was wrong with him. Id. He explained that he could not work and so the staff at work sent him to medical. Id. The acting nurse told Plaintiff that "they" were not going to see him. Id. Plaintiff asked again and she said "the doctors said no." Id. Plaintiff was told to leave medical after an hour of trying to get

help. Id.

Sometime after 2 p.m. that same day, Plaintiff was in his assigned housing unit and decided to take a shower. Document 1-2, pp. 3, 4, 6, 8; Inmate Injury Assessment Form dated February 20, 2008(attached as Ex. G to Defendant's Motion). Although he was assigned to a ground level cell, he chose to use the showers on the upper range. Document 1-2, pp. 4, 6, 8. At approximately 2:50 p.m., Plaintiff left the upper tier and started down the steps. Document 1-2, pp.3, 4, 6, 8; Inmate Injury Assessment Form dated February 20, 2008. He fell down the majority of the stair case, landing at the bottom. Id. Medical staff were called and immediately responded to the area. Inmate Injury Assessment Form dated February 20, 2008. He was found lying on the floor. His neck was immobilized and he was placed on a back board for transportation to the Health Services Unit. Id. There were no visible injuries absent minor scratches on his right shoulder and upper arm. Id. He was not responsive to questions but was whimpering. Id. He was taken to the Health Services Unit where he was examined by Defendant Dr. Loranth and Dr. Massa. Id. There was appropriate response to stimuli, however, Plaintiff was transported to Williamsburg Regional Hospital for further assessment and testing that was not available on site at FCI Williamsburg. Id.; Medical Records, p. 7 (attached as Ex. F to Defendants' Motion; Emergency Room Records (attached as Ex. H to Defendants' Motion). He was assessed by the Emergency Room physician and a variety of imaging studies were done. Medical Records, p. 7; Emergency Room Records; Test results, pp. 3-7 (attached as Ex. I to Defendants' Motion). All the studies were normal, indicating no significant injury. (Emergency Room Records; Test Results, pp. 3-7. At approximately 6:30 p.m., Plaintiff was returned to FCI Williamsburg. Medical Records, p. 7; Emergency Room Records, p. 1. The release orders indicated "observation, increase fluids, Tylenol for fever or pain." Emergency Room

Records, p. 1. He was in a wheelchair upon return from the local hospital. Medical Records, p. 7. Plaintiff was initially placed in the Special Housing Unit ("SHU") for observation. Id.  Notes were made for Plaintiff to be evaluated by medical staff the next morning. Id. pp. 7, 9.

At approximately 10:15 a.m. on February 21, 2008, Defendant Liles attempted to examine Plaintiff, however, he refused to be seen. Liles Dec. ¶ 8; Medical Records p. 9. At 12:30 p.m., Plaintiff was evaluated by Defendant Dr. Loranth, in the presence of several additional staff.  Loranth Dec. ¶10; Medical Records p. 8. Evaluation revealed a slight fever, but the patient had no other complaints. Id.  Dr. Loranth provided antibiotics due to an increase in Plaintiff's white blood cell count as noted in the emergency room urinalysis results and medication for pain. Medical Records, p. 8. Plaintiff was directed to rest and to increase fluids. Id.  He was allowed to retain the wheelchair for comfort. Id.

At approximately 12 noon on February 22, 2008, Plaintiff was called to medical for a followup. Loranth Dec. ¶ 11; Medical Records, p. 9. He was uncooperative with Defendant Dr. Loranth's efforts to evaluate him, refusing to get out of the wheelchair and onto the examination table. Id. Dr. Loranth noted that Plaintiff was clean and dressed, which indicated the patient was able to get up and out of the chair. Id.  He also noted the patient was able to move his legs, as he was using them to propel the wheelchair. Id.  Plaintiff was alert, oriented and able to remember events well. Id.  He was unhappy with Dr. Loranth, using profanity in his responses to him. Id. Dr. Loranth noted there was some evidence he might be malingering as the patient's complaints did not match the physical evidence. Id. Dr. Loranth continued the Tylenol 800's and advised Plaintiff that he could pick up the medications at the pill line. Id.

At approximately 6:30 that evening, Plaintiff was seen by Nurse Barnes with complaints

of nausea, dizziness, fever, and cough. Medical Records p. 10-11. While he had a slight fever, there

was no obvious distress. Id. The Nurse advised him to continue his medications, noting that he had

just started taking antibiotics and that they needed some time to show results. Id. Nurse Barnes

advised Plaintiff to return to the clinic on Monday if he was not better. Id.

On Monday, February 25, 2008, Plaintiff was seen by another clinician to followup on his

condition since the fall.  Id. The clinician advised him to do stretching exercises to enhance his

recovery and to return to the clinic the following morning at 9:00 a.m. for an appointment with a

physician. Id.  He was advised that the wheelchair did not appear to be necessary and that he would

likely be moved to crutches the following day. Id.

Plaintiff did not return as directed on February 26, 2008. Instead, he was next seen by

Defendant Dr. Loranth on February 29, 2008. Loranth Dec. ¶ 14; Medical Records, p. 12-13. He was

uncooperative with Defendant Dr. Loranth's examination, refusing to answer any questions about

his condition or his pain. Id.  He did get on the exam table without problem or assistance. Id.  Upon

examination, there was no physical evidence of any injury. Id.  Defendant Dr. Loranth was aware that

Plaintiff had been seen by several staff walking in the unit unassisted, dressing himself, and using

a cane to walk to the Lieutenant's office. Id. Defendant Dr. Loranth revoked the authorization for

the wheelchair and authorized a cane until March 17, 2008. Dr. Loranth advised Plaintiff that he

needed to get up and about to aid in his recovery and that he could return to work on March 3, 2008,

as his work assignment was sedentary (in the UNICOR Call Center). Loranth Dec. ¶ 14; Medical

Records, p. 13. Plaintiff was directed to return to the clinic if he had any problems.  Id.

Plaintiff's next medical contact was on March 1, 2008, when there was a report that he fell

while in the dining hall during the lunch meal. Inmate Injury Assessment Form dated March 1, 2008

(attached as Ex. J to Defendants' Motion); Rigney Dec. ¶¶ 6-7). Physician Assistant Rigney responded to the dining hall upon receiving a call for medical assistance. Rigney ¶ 6. He noted that Plaintiff was laying on the floor, alert and in no apparent distress. Test Results; Rigney Dec. ¶ 6. Lieutenant Commander Rigney took precautions by placing Plaintiff on a back board and transporting him to the medical unit for a more thorough examination. Id. There was no indication of injury as a result of this fall. Id. Lieutenant Commander Rigney assessed Plaintiff to determine if he could ambulate or required the assistance of another person. Rigney Dec. ¶ 7. Lieutenant Commander Rigney provide Plaintiff with a walker to enhance his stability and determined that he could ambulate with this device without problem and without the need of additional personal assistance. Id. He was directed to followup with Defendant Dr. Loranth on March 3, 2008. Id. Plaintiff did not return to the medical unit as directed on March 3, 2008. Medical Records, pp. 14-16.

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and

inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.     DISCUSSION

### A.     Subject Matter Jurisdiction

Plaintiff brings his first cause of action under Bivens. Initially, the court notes that Bivens claims are not actionable against the United Sates, federal agencies, or public officials acting in their official capacities. FDIC v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Suits against federal officials may not be brought under § 1983. District of Columbia v. Carter, 409 U.S. 418, 424-25, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). Federal courts have power under 28 U.S.C. § 1331 (1994) to award damages occasioned by infringements by federal officials of constitutionally protected interests. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S.

-10-

388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); see Radin v. United States, 699 F.2d 681, 684 (4th Cir.1983) ( Bivens recognized an action against federal officers sued in individual capacities, but not against the United States). Plaintiff's Bivens action cannot lie against the United States nor against the individual defendants in their official capacities. See United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (the United States cannot be sued without its express consent.); Radin v. United States, 699 F.2d 681, 685 (4th Cir.1983); Keene Corp. v. United States, 700 F.2d 836, 845 n. 13 (2d Cir.1983) (Bivens does not allow for recovery of money damages, or suits in general, against the government itself.). Accordingly, Plaintiff's Bivens claims against Defendants in their official capacities and against the United States should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P.[2]

### B.     Exhaustion of Administrative Remedies

Defendants assert that Plaintiff has failed to exhaust his administrative remedies as to some of the claims raised in his Complaint.  Specifically, he has filed grievances concerning his alleged denial of medical care on February 20, 2008, Remedy ID # 4871661, and the taking of the wheelchair by Dr. Loranth. Remedy ID # 4886772. Hollett Dec. ¶10-11. He has not exhausted any claims related to Officer Heinrichs or the disciplinary action taken against him by Dr. Loranth for malingering or refusing to leave the medical area. Hollett Dec. ¶ 12.  In his Response to Defendants' Motion, Plaintiff concedes that he has not exhausted any claims relating to Heinrichs or the disciplinary action taken against him for malingering or refusing to leave the medical area.

---

[2]Sovereign immunity does not bar damage actions against federal officials in their individual capacities for violation of an individual's constitutional rights. Gilbert v. Da Grossa, 756 F.2d 1455, 1459 (citing Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846(1979)). Thus, to the extent Defendants are being sued in their individual capacities under Bivens, Plaintiff's claims are not barred by the doctrine of sovereign immunity.

Under the Prison Litigation Reform Act ("PLRA") a prisoner is required to exhaust his administrative remedies before filing a <u>Bivens</u> action concerning his confinement. <u>See</u> 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") This provision is mandatory, and prisoners must exhaust all available remedies, even those where the relief requested cannot be granted administratively. <u>Booth v. Churner</u>, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Exhaustion is required in all suits challenging prison conditions, not just suits brought under § 1983. <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). A prisoner must complete the administrative review process and meet all applicable deadlines in order to satisfy the requirement of exhaustion of administrative remedies. "Proper exhaustion" is required. <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).  Because Plaintiff admits that he has not exhausted his claims against Defendant Heinrichs or any claims arising out of the disciplinary action taken against him for malingering or refusing to leave the medical area, dismissal of these claims is appropriate.  Accordingly, only Plaintiff's claims relating to the alleged denial of medical care on February 20, 2008, and the taking of his wheelchair by Dr. Loranth should move forward to a discussion on the merits.

### C.    Absolute Immunity Under the Public Health Service Act

As noted above, Defendant Liles is a Lieutenant in the United States Public Health Service.  Defendants argue that he is absolutely immune from suit under the terms of the Public Health Service Act (PHSA), 42 U.S.C. § 233(a)(1998). Section 233(a) makes the Federal Tort Claims Act the exclusive remedy for legal actions against members of the Public Health Service "for damage

for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions ..., by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment." Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000).

Section 233(a) protects commissioned officers or employees of the Public Health Service from being subject to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead. The United States, in effect, insures designated public health officials by standing in their place financially when they are sued for the performance of their medical duties. Where "Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective" the plaintiff is barred from bringing a Bivens action. Carlson v. Green, 446 U.S. 14, 18-19 (1980). Many courts have held that § 233(a) is just such an alternative remedy. Id. at 20 (citing § 233(a), in the Bivens context, as an example of a statutory provision that explicitly designates an action under the FTCA as the exclusive remedy). The Fourth Circuit has upheld dismissal of a Bivens action against a Public Health Services official due to absolute immunity under § 233(a). See, e.g., Butler v. Shearin, 279 Fed.Appx. 274, 275 (4th Cir. 2008) (per curiam), aff'g No. 04-2496, 2006 WL 6083567, at *7, n. 23 (D. Md. 2006); Cook v. Blair, 82 Fed.Appx. 790, 791 (4th Cir. 2003), aff'g No. 02-609, 2003 WL 23857310, at **1-2 (E.D.N.C. 2003). The Third, Fifth and Sixth Circuit have reached the same conclusion. See Anderson v. Bureau of Prisons, 176 Fed.Appx. 242, 243 (3d Cir. 2006)(per curiam); Montoya-Ortiz v. Brown, 154 Fed.Appx. 437, 439 (5th Cir. 2005) (per curiam); Schrader v. Sandoval, 203 F.3d 827, 1999 WL 1235234, at *2 (5th Cir. 1999); Walls v. Holland, 198 F.3d 248, 1999 WL 993765, at *2 (6th Cir. 1999); Beverly v. Gluch, 902 F.2d 1568, 1990 WL

67888, at *1 (6th Cir. 1990).

However, recently, the Ninth Circuit held that Congress did not, through § 233(a), explicitly declare the FTCA to be a substitute for Bivens liability. Castaneda v. United States, 546 F.3d 682, 691-92 (9th Cir. 2008). One court in this district has examined the Castaneda decision in detail and expressly adopted the Ninth Circuit's reasoning.  See Starling v. United States, 664 F.Supp.2d 558, 564-65 (D.S.C. 2009).  At the time Defendants filed their Motion, oral argument had been held before the Supreme Court and a decision was pending.  On May 3, 2010, the Supreme Court issued its opinion, reversing the Ninth Circuit's ruling in Castaneda and expressly holding that the PHSA, 42 U.S.C.A. § 233(a), precludes Bivens actions against Public Health Services personnel for constitutional violations arising out of their official duties.  Hui v. Castaneda, 130 S.Ct. 1845, 1854 (2010).

Because Defendant Liles is a Lieutenant in the United States Public Health Service, and Plaintiff's claims against him arise out of "the performance of medical, surgical, dental, or related functions," Liles is immune from such claims as presented under Bivens and dismissal is appropriate.[3]

### D.    Qualified Immunity

---

[3]In his Response to Defendants' Motion, Plaintiff asserts that, to the extent a claim under the Federal Tort Claims Act is the exclusive remedy for the actions of Liles, the Court should read Plaintiff's Complaint as asserting a claim under the Federal Tort Claims Act.  However, in his Complaint, Plaintiff clearly asserts claims for violation of his constitutional rights.  The Court cannot read into a Complaint a cause of action that has not been "squarely presented."  See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir.1985).  See also Barnett v. Hargett, 174 F.3d 1128 (10th Cir.1999) (holding that a district court cannot rewrite a complaint to include claims that were never presented).  Further, Plaintiff has failed to show that has met the separate exhaustion requirements under the FTCA.  See 28 U.S.C. § 2675; Plyler v. U.S., 900 F.2d 41(4th Cir.1990) (finding a failure to exhaust administrative remedies under the FTCA deprives district court of subject matter jurisdiction).

Plaintiff alleges that Defendant Dr. Loranth violated his rights to be free from cruel and unusual punishment when he denied him medical treatment upon his request on February 20, 2008, and when Dr. Loranth took his wheelchair while he was still needed it.  Dr. Loranth asserts his is entitled to qualified immunity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has previously held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); see also Saucier v. Katz, 533 U.S. 194, 201 (2001); Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.2000).  However, recently, the Supreme Court ruled that courts are no longer bound to follow the two-part inquiry for qualified immunity that had been required by Saucier. Pearson v. Callahan , 555 U.S.223, 129 S.Ct. 808, 818 (2009).  As the Court noted, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 819.  The Pearson Court clarified that Courts may still apply the two-part inquiry from Saucier when that "order of decision-making will best facilitate the fair and efficient disposition of [the] case." Id. at 821.

-15-

In <u>Maciariello v. Sumner</u>, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

<u>Maciariello</u>, 973 F.2d at 298.

Qualified immunity is a privilege that provides "an immunity from suit rather than a mere defense to liability." <u>Saucier</u>, 533 U.S. at 200-01. This doctrine "– which shields Government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights – is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation." <u>Iqbal</u>, 129 S.Ct. at 1945-46. For this reason, the Supreme Court instructs courts to resolve "immunity questions at the earliest possible stage in litigation." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991).

As stated above, Plaintiff alleges that he was subjected to cruel and unusual punishment when Dr. Loranth denied him medical treatment on February 20, 2008, and again when Dr. Loranth took away his wheelchair. In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," <u>Id</u>. (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," <u>Gregg v. Georgia</u>, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is

manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

. . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, 429 U.S. at 107; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

"To establish such a constitutional violation, a claimant must prove that, objectively assessed, he had a 'sufficiently serious' medical need to require medical treatment, and that [prison personnel], subjectively aware of the need and of its seriousness, nevertheless acted with 'deliberate

indifference' to it by declining to secure available medical attention." Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir.1995) (citing Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994)); Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); Wilson v. Seiter, 501 U.S. 294, 297-98, 111 S.Ct. 2321, 2323-24, 115 L.Ed.2d 271 (1991).

Therefore, an Eighth Amendment analysis entails both an objective component and a subjective component and a prison official cannot be liable unless the official knows of and disregards an excessive risk to inmate health and safety. The official must both be aware of facts from which the inference that a substantial risk of serious harm exists, and the official must also draw the inference. Brice, 58 F3d at 105 (citing Farmer, 511 U.S. at 837). "Actual knowledge or awareness on the part of the alleged inflictor thus becomes essential to proof of deliberate indifference because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." Id.

Plaintiff alleges that he sought medical attention from Dr. Loranth on February 20, 2008, due to vomiting, dizziness, chills, headaches, weakness, and blurred vision, but he denied him treatment. Dr. Loranth concedes for purposes of their Motion that, under the objective component, Plaintiff had a serious medical need. In fact, although Dr. Loranth avers that he has no recollection of Plaintiff requesting and being denied medical treatment on February 20, 2008, prior to his fall, he avers that had Plaintiff seen them on February 20, 2008, and reported the conditions described in his Complaint, he would have been examined at least to determine whether an emergency situation existed.

Nevertheless, Dr. Loranth argues that Plaintiff has failed to show that he knew of and

disregarded a substantial risk of harm to Plaintiff's health. Plaintiff alleges that he asked Liles and Dr. Loranth for treatment on the morning of February 20, 2008. However, Dr. Loranth does not recall seeing Plaintiff that morning and there are no medical records to verify that Plaintiff visited medical on the morning of February 20, 2008. In Response to Defendants' Motion, Plaintiff argues that the Affidavits of Evans and Bittick prove that Liles and Dr. Loranth were the only doctors examining patients that morning. However, those Affidavits do not mention Liles or Dr. Loranth. They state that Plaintiff arrived at medical in the afternoon of February 20, 2008, and Ms. Gillyard or "the acting nurse" informed Plaintiff that the doctors said they would not see him. These Affidavits do not corroborate Plaintiff's statement in his Complaint that he visited medical in the morning and saw Liles and Dr. Loranth at that time. Plaintiff's self-serving statements, without more, are insufficient to create dispute of fact that Dr. Loranth knew of and disregarded a substantial harm to Plaintiff's health. See Larken v. Perkins, 22 F. App'x 114, 115 n. * (4th Cir.2001) (noting that non-movant's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation, ... [is] insufficient to stave off summary judgment"); see also Fuller v. County of Charleston, 444 F.Supp.2d 494, 499 (D.S.C.2006) ("It is well established that a court does not abuse its discretion by striking portions of a party's affidavit consisting of conclusory statements or self-serving opinions without objective corroboration.").

Nevertheless, even assuming Plaintiff did see Dr. Loranth on the morning of February 20, 2008, there is still insufficient evidence in the record to indicate that Dr. Loranth could have known that Plaintiff would later fall down the stairs as a result of his medical condition. In fact, the medical records submitted do not indicate that Plaintiff's fall resulted from any pre-existing condition suffered by Plaintiff. The studies conducted at the emergency room were normal, indicating no

-19-

significant injury, and Plaintiff was returned to FCI Williamsburg, with release orders that indicated "observation, increase fluids, Tylenol for fever or pain."  Simply put, Plaintiff fails to present sufficient evidence to establish a causal connection between his condition on the morning of February 20, 2008, and his subsequent fall.  Thus, Plaintiff has failed to show that Dr. Loranth knew of and disregarded a significant risk of harm to Plaintiff's health. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the cruel and unusual punishments clause." Whitley v. Albers, 475 U.S. 312, 319 (1986).

Additionally, Dr. Loranth's decision to replace Plaintiff's wheelchair with a cane after approximately nine days does not amount to medical indifference.  Dr. Loranth evaluated Plaintiff on February 29, 2008, and observed Plaintiff get on the exam table without problem or assistance. Dr. Loranth was aware that Plaintiff had been seen by several staff walking in the unit unassisted, dressing himself, and using a cane to walk to the Lieutenant's office. Accordingly, Dr. Loranth determined that the wheelchair was no longer necessary and he authorized the use of a cane until March 17, 2008. Dr. Loranth advised Plaintiff that he needed to get up and about to aid in his recovery.

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir.1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F.Supp. 326 (S.D.Ga.1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir.1976); Lamb v. Maschner, 633 F.Supp. 351, 353 (D.Kan.1986). Mistakes of medical judgment

are not subject to judicial review in a § 1983 action. <u>Russell v. Sheffer</u>, 528 F.2d 318, 319 (4th Cir.1975). Courts are reluctant to "second-guess the propriety or adequacy of a particular course of treatment." <u>Bowring v. Godwin</u>, 551 F.2d 44, 48 (4th Cir. 1977). Here, Plaintiff simply disagrees with Dr. Loranth's assessment that he no longer needed a wheelchair.  Plaintiff has failed to present sufficient evidence to show that Dr. Loranth's decision to discontinue the wheelchair amounts to a constitutional violation.

The only other claim raised by Plaintiff that could be considered to be exhausted is his claim that Dr. Loranth violated his constitutional rights by retaliating against him for filing a grievance by discontinuing the use of the wheelchair.  To state a claim of retaliation, a plaintiff must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir.1994).  An inmate must also present more than conclusory accusations of retaliation, <u>Id.</u> at 74, and must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. <u>See</u>, <u>e.g.</u>, <u>Cochran v. Morris</u>, 73 F.3d 1310, 1318 (4th Cir.1996); <u>Hughes v. Bledsoe</u>, 48 F.3d 1376, 1387 n. 11 (4th Cir.1995). Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. <u>American Civil Liberties Union, Inc. v. Wicomico County</u>, 999 F.2d 780, 785 (4th Cir.1993).

In the present case, Plaintiff alleges that Dr. Loranth discontinued Plaintiff's use of the wheelchair because he utilized the institutional grievance system. However, inmates have no constitutionally protected right to a grievance procedure. <u>See</u> <u>Adams</u>, 40 F.3d at 75; <u>Blagman v. White</u>, 112 F.Supp.2d 534, 542 (W.D.Va.2000) (inmate has no constitutional entitlement to grievance procedure); <u>Ashann-Ra v. Commonwealth of Virginia</u>, 112 F.Supp.2d 559, 569

(W.D.Va.2000) ("a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983"). Thus, Plaintiff has failed to establish that Dr. Loranth's acts were taken in response to the exercise of a constitutionally protected right.

For these reasons, Plaintiff has failed to show that Dr. Lornath deprived him of an actual constitutional right and, thus, he is entitled to qualified immunity. However, even if the Court were to find that Plaintiff has established some theory of liability upon the part of Dr. Loranth, and therefore, the existence of a constitutional deprivation, Dr. Loranth is still entitled to qualified immunity. Plaintiff fails to show that Dr. Loranth transgressed bright lines of any statutory or constitutional rights of Plaintiff of which he was aware in the discretionary exercise of his professional judgment. Thus, Dr. Loranth is entitled to qualified immunity.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Document # 30) be granted and this case be dismissed in its entirety.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 27, 2011
Florence, South Carolina

**The parties are directed to the important notice on the following page.**

-22-